CITIZENS' NAT. BANK OF STAMFORD, TEX., v. PIGG et al.

(Circuit Court of Appeals, Fifth Circuit. November 28, 1917. Rehearing Denied January 24, 1918.)

No. 3041.

1. BANKS AND BANKING ☞152—CERTIFICATE OF DEPOSIT—WHAT CONSTITUTES.

Plaintiff and her husband had on deposit in a state bank a sum of money in excess of $15,000. On that date, in a conference between plaintiff and her husband and the cashier, it was agreed that $10,000 should be thereafter payable to plaintiff, whereupon an entry was made in one of the ordinary passbooks of the bank on the pages at the top of which were the words: "In account with ――――, Avoca, Texas." "Avoca State Bank, Dr., in acc't with ――――, Cr." At the left-hand side were the words, "April 1st, amount $10,000.00 described on following page," while on the opposite page were the words, "Amount at interest at the rate of 8 per cent. per annum interest payable monthly to the credit of" plaintiff,

and following which was a notation, "Interest paid April 1st," signed by the cashier without the addition of the word "cashier" after his name. Thereafter, the bank became financially embarrassed, and a special agent named by the Commissioner of Banking of Texas took possession, and as a result defendant agreed, in consideration of the delivery of the assets of such bank, to assume and pay all depositors the balances due them as shown by the books of such bank, also all unpaid certificates of deposit, cashiers' checks, etc. *Held* that, though the books of the bank did not show plaintiff's claim, yet the passbook, being signed by the bank and by the cashier, amounted to a certificate of deposit, and plaintiff was entitled to recover thereon against defendant.

2. BANKS AND BANKING ⊙⇒154(1)—CERTIFICATE OF DEPOSIT—ACTION ON— PARTIES.

In such case, as defendant assumed the debt of the bank to plaintiff and took over the assets to which she had a right to look for payment under a contract made by a state officer for her credit, she was entitled to sue at law without the intervention of a trustee.

3. BANKS AND BANKING ⊙⇒152—CERTIFICATES OF DEPOSIT.

In such case, the statement that the amount of $10,000 was at interest was sufficient to show a consideration for the obligation of the bank to pay it.

4. BANKS AND BANKING ⊙⇒154(5)—CERTIFICATE OF DEPOSIT—ACTION ON— PLEADING.

In such case, as the certificate of deposit was signed by the bank, although the notation as to interest was signed by the cashier, liability was fixed by the signature of the bank, and no allegation was necessary to show that the cashier who did not add to his name the word "cashier" signed the interest notation in his official capacity.

5. BANKS AND BANKING ⊙⇒113—CONTRACTS—IMPEACHMENT.

Where, a Texas state bank being in financial difficulties and in the charge of a special agent of the Commissioner of Banking, defendant, another state bank, entered into an agreement with the special agent to assume the liabilities of the embarrassed institution in consideration of the transfer of its assets, defendant cannot thereafter defeat an action by a creditor of the embarrassed bank on the ground that the special agent had no authority to make a contract; defendant not undertaking to return the assets and restore the embarrassed institution to its former condition.

6. BANKS AND BANKING ⊙⇒82(7)—PRESUMPTION OF DEBTS—EVIDENCE.

In such case, evidence of subsequent agreements made between defendant and the directorate of the embarrassed institution are inadmissible to affect its liability to a creditor of the embarrassed institution.

7. BANKS AND BANKING ⊙⇒154(7)—ACTIONS—EVIDENCE.

In such case, evidence of deeds of trust made by certain directors of the embarrassed bank to secure defendant in repayment of losses arising out of the transaction is admissible in an action by the holder of a certificate of deposit payment of which defendant assumed.

In Error to the District Court of the United States for the Northern District of Texas; Edward R. Meek, Judge.

Action by Rada Pigg and another against the Citizens' National Bank of Stamford, Tex. There was a judgment for plaintiffs, and defendant brings error. Affirmed.

W. M. Sleeper and Chas. A. Boynton, both of Waco, Tex., and J. W. Boynton, of Anson, Tex., for plaintiff in error.

A. H. Kirby, of Ft. Worth, Tex., E. T. Brooks and Stinson & Chambers, all of Anson, Tex., and J. M. Wagstaff, of Abilene, Tex., for defendants in error.

⊙⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Before WALKER and BATTS, Circuit Judges, and FOSTER, District Judge.

BATTS, Circuit Judge. The Avoca State Bank, financially involved, was in charge of a special agent named by the Commissioner of Banking of Texas. Pending negotiations with the Citizens' National Bank of Stamford, the commissioner wrote that:

> "If the bank assuming your deposits will also assume payment of the outstanding bills payable of the Avoca State Bank, we will be willing to immediately surrender to the bank assuming this liability all available cash collections and all other assets of the bank."

Thereafter the Citizens' Bank, by its cashier, executed to H. E. Harland, the special agent, a receipt for described assets of the Avoca Bank, being all its assets, and obligated itself as follows:

> "In consideration of the delivery of the assets mentioned above, the Citizens' National Bank of Stamford, Texas, does hereby assume and agree to pay all depositors the balance due them as shown by the books of the Avoca State Bank of Avoca, Texas (list attached as far as determined); also, all unpaid certificates of deposit, cashier's checks, outstanding drafts, and all other liabilities of the Avoca State Bank of Avoca, Texas."

[1] Antecedent to April 1, 1914, Mrs. Rada Pigg and her husband had on deposit with the Avoca State Bank a sum of money in excess of $15,000. On that date, at a conference between Mr. and Mrs. Pigg and H. H. Hall, who was cashier of the Avoca Bank, it was agreed that $10,000 of the amount should be thereafter payable to Mrs. Pigg. This agreement reached, the following entry was made in one of the ordinary passbooks of the Avoca State Bank, on pages at the top of which were the words "Avoca State Bank, in account with ———, Avoca, Texas": "Avoca State Bank, Dr., in acc't with ———, Cr." On the left-hand page were the words: "April 1st, amount $10,000.00 described on following page." On the opposite page were the words:

> "Amount at interest at the rate of 8 per cent. per annum, interest payable monthly to the credit of Mrs. J. H. Pigg in the Avoca State Bank, Avoca, Texas. Interest paid to April 1st, 1914, H. H. Hall."

The language of this writing, together with an inspection of the original instrument, leads to the conclusion that the meaning is as if punctuated as follows:

> "Amount at interest, at the rate of 8 per cent. per annum, interest payable monthly, to credit of Mrs. J. H. Pigg in the Avoca State Bank, Avoca, Texas."

In other words, the conclusion is that the statement was to the effect that the amount of $10,000, written on the preceding page, was an amount at interest to the credit of Mrs. J. H. Pigg, and that it was at interest at the rate of 8 per cent. per annum, payable monthly. It was not the interest payable monthly which was to the credit of Mrs. Pigg, but the $10,000 written on the preceding page. The interest was paid to that time and was thereafter in fact at the bank paid monthly for a number of months.

The writing was a statement of the Avoca State Bank, in a book of the kind ordinarily furnished by a bank to evidence deposits. The

name of the bank was written in the statement by a person authorized to sign it, and the whole constituted a written acknowledgment of an obligation due from the bank to Mrs. Pigg. The name "Avoca State Bank," if not in fact written at the end of the acknowledgment, had, written in the body of the instrument, the same effect.

It appears that this transaction was not shown on the books of the Avoca State Bank, and there is no evidence that the Citizens' National Bank knew anything of it. In terms, the Citizens' National Bank undertook to pay all depositors, "as shown by the books of the Avoca State Bank." It also undertook to pay all certificates of deposit, and to pay all other liabilities of the Avoca State Bank. The limitation as to what was "shown by the books" applies to depositors whose deposits would be evidenced alone by the books. A special provision is made with reference to certificates of deposit, and there is no requirement that they should be so shown. Neither is the provision as to other liabilities of the Avoca State Bank limited by what was "shown on the books." The writing has all the necessary elements of a certificate of deposit, and, as such, was immediately and directly under the terms of the contract executed by the Citizens' Bank.

[2] It is insisted that there were no contractual relations between Mrs. Pigg and the Citizens' Bank, that she could not sue, and that the matter was cognizable only in equity. The bank assumed the debt to Mrs. Pigg and took over the assets to which she had a right to look for payment under a contract made by a state officer for her benefit. She was entitled to sue without the intervention of a trustee and at law.

[3] It is insisted that no consideration for the obligation was alleged or shown. A statement that there is "an amount at interest" in a bank necessarily implies a receipt by the bank of the amount.

[4] It is insisted that the pleadings are insufficient to hold the bank upon the signature of H. H. Hall, who was cashier, but who did not indicate his official capacity in the writing. Liability is fixed by the signature of the bank, and no pleading was required, other than that filed.

[5] It is insisted that the special agent had no authority to make the contract with the bank; that the bank got no title to the assets and is not liable on its promise. The agent had the same authority as the commissioner. The limitations of the statute requiring an order of the court doubtless apply to compromises and sales, where less than the face of the obligations are received. In this case, in any event, no one who has a right to complain is questioning the validity of the transaction. The bank does not undertake to return the property received by it, and cannot restore the original condition. The Bank Commissioner is guilty of no misrepresentation or fraud, nor is Mrs. Pigg. The bank was doubtless mistaken as to the amount of obligations assumed by it, but it is to suffer from its mistake, rather than Mrs. Pigg, who is guilty of no character of wrong, and has not had the misfortune to make a mistake.

[6] Error is claimed in the refusal of the court to permit testimony to the effect that the Citizens' Bank, contemporaneously with the making of the contract, entered into an agreement with the directors of the Avoca Bank by which the Citizens' Bank was to receive the money on

hand and pay off the depositors, and that all other assets were to be turned over to the Avoca directors. This agreement could not have affected the rights of Mrs. Pigg under the contract made by the Banking Department for her benefit, and the evidence was properly excluded. The exclusion of a written agreement between the directors of the two banks, dated October 31, 1914, and limiting liability to deposits "shown by the books" on a given date, and of evidence indicating that the Citizens' Bank had no knowledge of the Pigg certificate, was proper for the same reason.

[7] Complaint is also made of the action of the court in permitting evidence of deeds of trust by certain Avoca Bank directors to the Citizens' Bank, to secure the bank in the repayment of losses for the transactions hereinbefore considered. The acceptance of instruments as drawn were substantially acknowledgments of liability by the Citizens' Bank on the contract with the special agent.

No error has been found.

The judgment is affirmed.